## TEXAS EMPLOYERS INSURANCE ASSOCIATION V. CHARLES BRANDON.

No. 6506.   Decided January 22, 1936.
Rehearing overruled February 19, 1936.
(89 S. W., 2d Series, 982.)

*Lawther, Cox & Cramer,* of Dallas, for plaintiff in error.

Where a claimant under the workmen's compensation law settles his claim against a negligent third party for a substantial sum and executes a complete release to such negligent third party, his claim against the insurer of his employer is released. Ocean Acci. & Guaranty Corp. v. Cooper, 294 S. W., 248, and authority cited in opinion.

*E. B. Muse* and *George C. Cochran,* both of Dallas, for defendant in error.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This is a proceeding under the Workmen's Compensation Law. Charles Brandon was the employe, Community Natural Gas Company the employer or subscriber, and Texas Employers Insurance Association the insurer. The employe's claim for compensation insurance was allowed by the Industrial Accident Board, and the insurer filed this suit in the district court to set aside the award. The employe filed a cross-action seeking judgment as for total and permanent disability and praying that it be paid him in a lump sum. Thereafter the insurer filed a plea in bar setting up a release by the employe of a negligent third person. By agreement this plea in bar was heard in limine and the trial court, having sustained same, rendered judgment setting aside the award and denying to the employe any relief on his cross-action. An appeal was prosecuted by the employe to the Court of Civil Appeals, which rendered judgment reversing

the judgment of the trial court and remanding the cause thereto. 58 S. W. (2d) 894.

The release is in this language:

"THE STATE OF TEXAS )
"COUNTY OF DALLAS )

"KNOW ALL MEN BY THESE PRESENTS, that I, Charles Brandon, of Dallas, Texas, for and in consideration of the sum of Twelve Hundred Fifty ($1250.00) Dollars, to me paid, the receipt of which is hereby acknowledged, have released and forever discharged John Ed Punchard, Jr., and the estate of John Ed Punchard, Sr., deceased, from any and all liabilities, claims and demands and by these presents have released and forever discharged the said John Ed Punchard, Jr., and the estate of John Ed Punchard, Sr., deceased, from any and all liabilities, claims and demands to me on account of any and all injuries, losses and damages sustained by me to my person and/or property which have been caused and which have resulted or which may at any time arise by reason of the injuries sustained by me, the said Charles Brandon, in the collision on January 19, 1929, on the viaduct between Oak Cliff and the City of Dallas, across the Trinity River, in the County of Dallas. This release being in full satisfaction and completely, absolutely and finally releasing the said John Ed Punchard, Jr., and the estate of John Ed Punchard, Sr., deceased, from any liabilities, claims or demands arising wholly or partially from the cause aforesaid known or unknown at this time, real or apparent.

"It being expressly understood that in the payment aforesaid, the said John Ed Punchard, Jr., and the estate of John Ed Punchard, Sr., deceased, acknowledge no liabilities whatsoever or responsibility for/in or connected with the collision aforesaid, but expressly deny the same.

"(Signed) Charles Brandon."

■ The trial court did not err in excluding testimony offered for the purpose of contradicting or limiting the effect of this release, for two reasons. There was no pleading of fraud, accident or mistake and the Punchards are not parties to this suit. We must, therefore, regard it as being what on its face it purports to be, an absolute release of the Punchards from all liability.

That the injury was caused under circumstances creating a legal liability in John Ed Punchard, Jr., or in the estate of John Ed Punchard, Sr., "to pay damages in respect thereof" is not

an issuable question in the instant suit, for that fact is alleged in the pleadings of both parties hereto. The question for decision is: Did the employe, by accepting the $1250.00 from the negligent third person and executing the release, thereby release the insurer from liability to pay compensation insurance?

Article 8307, Section 6a, of the Revised Statutes reads as follows:

"Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employe may at his option proceed either at law against that person to recover damages or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. If compensation be claimed under this law by the injured employe or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employe in so far as may be necessary and may enforce in the name of the injured employe or of his legal beneficaries or in its own name and for the joint use and benefit of said employe or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employe or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employe or his beneficiaries. The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employe or his beneficiaries and the approval of the board upon a hearing thereof."

■ This is not, strictly speaking, a statute making applicable the common law doctrine of election. The circumstance that the employe first elected to claim compensation is not regarded as significant, for it was not, under the statute, a binding election. The question must be decided just as if the release was executed before the claim for compensation was filed. The collection of compensation does not bar a subsequent action against the negligent third person to recover damages, but the amount of compensation recived by the injured employe must be credited upon the amount recovered from the wrongdoer, and only

the excess of the damages over the compensation collected is recoverable. Hanson v. Ponder (Com. App.), 300 S. W., 35.

■ While an election to proceed against the insurer for compensation does not altogether bar an action by the employe for damages against a negligent third person, an election to proceed at law against such person is a bar to the employe's right to compensation. Employers Indemnity Corporation v. Felter (Com. App.), 277 S. W., 376.

As observed in Hanson v. Ponder, supra: "In that section it is declared that original election 'to proceed at law against' a person not a party to the insurance arrangement shall cut off the right to 'compensation under this law,' but there is no comparable declaration about the effect of an original claim of compensation."

In Employers Indemnity Corporation v. Felter, supra, it was held that the widow of a deceased employe killed in the course of his employment, who prosecuted unsuccessfully a suit to judgment against third parties for damages for the employe's death, was thereafter barred from recovering compensation. That holding was based upon the ground that, as a result of the conduct of the widow in prosecuting to judgment a claim for damages against the negligent third person, the insurer was deprived of its valuable right to sue the alleged tort feasor. It is definitely and specifically held in that case that, in a suit for subrogation by the insurer against the negligent third person, the latter could successfully plead the former judgment as res adjudicata, and the decision is based upon that reasoning. If there is such privity between the employe and the insurer as that a judgment against the employe in his suit against the negligent third person, to which the insurer is not a party, is binding on the insurer and could be successfully pleaded by such third person in a subsequent suit brought against him by the insurer for subrogation, then it must be held that the insurer is bound by the release by the employe of the negligent third person executed before the right of subrogation matures. An absolutely release binds as effectively as a prior judgment. The two cases cannot be distinguished in principle.

■ It is argued that the insurer's right of subrogation became fixed when the claim for compensation was filed, and that the employe could not thereafter defeat that right by releasing the negligent third person. There is language in the article above quoted indicating that the right of subrogation arises when compensation is claimed by the injured employe, but a consideration

of the article as a whole makes it clear that that right does not mature until the insurer has paid or assumed to pay compensation.

There has been much written by courts in other jurisdictions on this question, and the numerical majority of the cases which we have discovered hold that an employe's right to compensation is not lost by his settlement with and release of the wrongdoer who caused his injuries, but in most, if not all, of these cases the statute under construction contained provisions materially different from those contained in our statute above copied.

■ For various equitable reasons the employe calls upon us to remand the cause to the trial court. Were the question one of whether, having reversed the judgment of the trial court, we should remand the case or render judgment, we would doubtless remand. But that is not the question. It is our view that the trial court committed no error. We cannot remand a cause unless reversible error was committed by the trial court.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court January 22, 1936.

Rehearing overruled February 19, 1936.