**G. B. WARNEKE, Appellant,**

**v.**

**ARGONAUT INSURANCE COMPANY,**
**Appellee.**

**No. 5808.**

Court of Civil Appeals of Texas.

El Paso.

Oct. 26, 1966.

Rehearing Denied Nov. 9, 1966.

Warren Burnett, Robert D. Pue, Odessa, for appellant.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, James M. O'Leary, Odessa, for appellee.

## OPINION

CLAYTON, Justice.

This is an appeal from the granting of a summary judgment in a workmen's compensation case. The appellant, G. B. Warneke, was, on June 24, 1960, employed as a driller by John Grappe Drilling Company and was working on a well owned by E. H. Hunt and located on the Hunt property in Crockett County. Appellant was at the controls of a drilling rig, using gas, which blew through the mousehole, apparently, when it exploded and caught fire. Appellant was burned and injured and was confined to the hospital for some 29 days. He timely filed a claim before the Industrial Accident Board and then, on October 21, 1961, filed this suit against the appellee carrier for a larger recovery.

Meanwhile, and some time after he was released from the hospital, Mr. Hunt handed him a typewritten instrument and he was requested to sign it. This instrument read:

"Ozona, Texas

August , 1960

Mr. E. H. Hunt

Ozona, Texas

Dear Mr. Hunt:

This is to advise you that I do not hold you in anywise or manner responsible or liable for the injuries I received while in the employ of John Grappe Drilling Company of Levelland, Texas which occurred on or about June 24, 1960, while engaged in drilling operations on Sue Hunt No. 2 well situated in Section 6, Block J., GC&SF Ry & Co. Survey in Crockett County, Texas.

I will assert no claim against you for damages since I do not consider you as being liable therefor.

Yours very truly,

s/ G. B. Warneke

G. B. Warneke, Snyder, Texas

"Sworn to and subscribed before me this the 5th day of August, 1960, to certify which, witness my hand and seal of office.

s/

Notary Public, Crockett County,

(SEAL) Texas"

Appellant said he would look it over, and he took it to a lawyer and they typewrote the following at the end of the first paragraph of the instrument:

"Except that this does not affect in any manner such claims I have against John Grappe Drlg. Co. or its Insurance carrier."

Mr. Hunt and Mr. Grappe approved the instrument with the typewritten addition, and then appellant signed the instrument and swore to it before a notary public on August 5, 1960. Appellant then gave the instrument to Mr. Hunt, who, although (according to appellant), there had been nothing mentioned about money, gave appellant a check for $500.00, which appellant accepted, cashed and spent.

The appellee insurance company filed an original answer to the compensation case containing the usual defenses in a workmen's compensation case, and then filed its motion for summary judgment. This motion first alleged that:

"The accident in question was an explosion resulting in a fire which caused burns to the Plaintiff. The deposition of the Plaintiff shows that the explosion occurred under the floor of the drilling rig and as a result of pressure which had accumulated thereunder. The direct

cause of the explosion or what caused the flames were matters which were and are indefinite in the mind of the Plaintiff, but the circumstances were such under the deposition of the Plaintiff as to give rise to a possible cause of action against the owner and operator of the premises for his failure to furnish the Plaintiff a safe place in which to work on the occasion in question."

The motion then continues, that:

### "IV.

" * * * after said possible cause of action had arisen, the Plaintiff, to-wit, on the 5th day of August, 1960, made, and executed and delivered to Mr. E. H. Hunt of Ozona, Texas, a valid release of any and all claims or causes of action which the said Plaintiff had against the said E. H. Hunt, as a result of the explosion and fire and the personal injuries sustained by the Plaintiff * * *

### "V.

"Under the terms and provisions of Section 6a of Article 8307 of the Revised Civil Statutes of the State of Texas, the Plaintiff, G. B. Warneke, had a right to proceed under the Workmen's Compensation Act or to proceed at law against a person other than the subscriber but not against both. The Plaintiff, G. B. Warneke, has proceeded at law against the person (E. H. Hunt) other than the subscriber (John Grappe Drilling Company) and has, therefore, made an election of his remedies and is barred by law from further proceeding against the Defendant in this Case. The Plaintiff's actions in releasing E. H. Hunt have foreclosed this Defendant from its right of subrogation provided to it by Section 6a of Article 8307, and that by foreclosing this Defendant's right of subrogation, the Plaintiff has likewise foreclosed any further action which he may have as against this Defendant."

The wording of Section 6a of Article 8307, Vernon's Ann.Tex.St., is as follows:

"Sec. 6a. Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employé may at his option proceed either at law against that person to recover damages, or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. If compensation be claimed under this law by the injured employé or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employé in so far as may be necessary and may enforce in the name of the injured employé or of his legal beneficiaries or in its own name and for the joint use and benefit of said employé or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employé or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employé or his beneficiaries. The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employé or his beneficiaries and the approval of the board, upon a hearing thereof."

The trial court, after hearing, granted appellee's motion for summary judgment; hence this appeal.

We feel that under the above statutory provision and the cases interpreting it, ap-

pellee's position that "the trial court did not err in granting appellee's motion for summary judgment because the release of a third party executed by appellant prior to proceeding for compensation benefits is a bar to such proceedings and to this suit" must be sustained.

The legislative reasoning behind the enactment of Section 6a of Article 8307, V.A.T.S., is fully and clearly set out in Employers' Indemnity Corporation v. Felter, 277 S.W. 376, 378 (Tex.Com.App., 1925) in an opinion adopted by our Supreme Court. The opinion uses the following language:

"* * * In the great majority of cases injuries are not the result of the act of third parties, but result from the employment itself. But, realizing that laborers might be injured, while working for the subscriber, by the acts of third parties, the statute attempted to do the right thing under circumstances of that kind. It was not the purpose of the Compensation Act to protect third parties from the consequences of their negligence. The lawmakers, realizing that much larger recoveries could be had by injured people under the common law than under compensation statutes, very wisely left it to the injured person to exercise an option in the premises and seek to recover what seemed to him to be for his best interests. On the other hand, if the injured person preferred compensation, then the lawmakers decided it was right to give to the insurance company the right to make the guilty party pay; hence the act subrogates the insurance company to the cause of action which the injured party himself had against the third party. This is a most valuable right. No one could well deny this conclusion. But the Legislature went further and protected the injured employee by restricting the insurance company in its recovery against the tort-feasor to a return of the amount it had paid out in compensation.

If it recovered more than such amount from the tort-feasor, the excess goes to the injured employee. So every effort was made to give to the injured employee every possible advantage, at the same time according to the insurance company a right to recoup its loss if the injury was negligently caused by some third party."

Such suits under this right have been termed "recoupment suits".

■ Appellant takes the position that the wording of the letter to Hunt, after appellant had consulted his attorney and language was added to the letter, did not constitute a complete release, since it expressly excluded the release of any cause of action appellant had against his employer, John Grappe Drilling Company, or its insurance carrier, appellee here. But the letter acted as an absolute release of Hunt from any actions brought against him by appellant or on his behalf, such as a subrogation claim would be. In Texas Employers Ins. Ass'n v. Brandon, 126 Tex. 636, 89 S.W.2d 982, 983 (Tex. Com.App., 1936, adopted opinion), where parties by the name of Punchard stood in the position in which we find Hunt here, the court said:

"The trial court did not err in excluding testimony offered for the purpose of contradicting or limiting the effect of this release, for two reasons: There was no pleading of fraud, accident, or mistake; and the Punchards are not parties to this suit. We must therefore regard it as being what on its face it purports to be, an absolute release of the Punchards from all liability.

* * * * * *

"While an election to proceed against the insurer for compensation does not altogether bar an action by the employee for damages against a negligent third person, an election to proceed at law against such person is a bar to the employee's right to compensation. Em-

ployers' Indemnity Corporation v. Felter (Tex.Com.App.) 277 S.W. 376.

\*   \*   \*   \*   \*   \*

"\* \* \* If there is such privity between the employee and the insurer as that a judgment against the employee in his suit against the negligent third person, to which the insurer is not a party, is binding on the insurer and could be successfully pleaded by such third person in a subsequent suit brought against him by the insurer for subrogation, then it must be held that the insurer is bound by the release by the employee of the negligent third person executed before the right of subrogation matures. An absolute release binds as effectively as a prior judgment. The two cases cannot be distinguished in principle."

■ It is not necessary that compensation has been paid or assumed to be paid for a right to subrogation to exist. Such right may exist but has not matured until such payment or assumption has occurred. However, this unmatured right may be destroyed by pursuing the injured party's claim against a third party. We believe this has been done in the present case. As said in Texas Employers' Insurance Ass'n v. Soliz, 288 S.W.2d 165, 167, 168 (Tex.Civ.App., 1956; ref., n. r. e.): "The Association by the act is subrogated 'to the rights of the injured employé'. If the employee has no rights neither does the Association". The cited case goes farther in describing the position of the insurance carrier which equally well applies, except for the reference to "fraud", to the case at hand:

"By another point, the Association urges that the employee has prejudiced the Association's subrogation rights to such an extent that the employee is estopped to assert a claim for compensation against the Association. We agree with the point. The Association has lost its rights against the third party, and this is so not because of anything that the Association has done or could

have done. It was a stranger to the negotiations about the third-party release, did not participate in the fraud, and, after its discovery, could not file or compel the employee to file a suit against the third party. The Association, though blameless and helpless is now also actionless, yet it is now the only one called upon to pay."

A review of many of the points discussed above is to be found in the Texas Supreme Court case of Hart v. Traders & General Ins. Co., 144 Tex. 146, 189 S.W.2d 493, 494 (1945). The court makes the following pronouncements:

"The release recites that Hart received $50 in consideration for the execution and delivery of the release. The parties to the release, aside from Hart, are not parties to this suit, hence in this action the release must be accepted for what it purports to be. Texas Employers Ins. Ass'n v. Brandon, 126 Tex. 636, 89 S.W.2d 982.

\*   \*   \*   \*   \*   \*

"We are of the opinion that so long as the release which Hart executed to J. T. Hollis and Interstate Materials Company is valid and outstanding he cannot recover compensation under the Compensation Law for injuries received as a result of the same accident. Employers' Indemnity Corporation v. Felter, Tex.Com.App., 277 S.W. 376; Brandon case, supra. The decision is based upon the principle that a release is a bar to any right of action growing out of the matter discharged. Chouquette v. McCarthy et al., Tex.Civ.App., 56 S.W. 956, writ refused. It conclusively estops the releasor from making further efforts to enforce the claim released. McClure v. Fall et al., Tex. Com.App., 67 S.W.2d 231.

"It was definitely ruled in the Felter case, 277 S.W. 376, that an election to proceed against the insurer for compensation does not altogether bar an action

by the employee for damages against a negligent third person but 'an election to proceed at law against such person is a bar to the employee's right to compensation.' Brandon case, supra [126 Tex. 636, 89 S.W.2d 983]. It was pointedly held in the Brandon case that 'an absolute release binds as effectively as a prior judgment.'

\*     \*     \*     \*     \*     \*

"The respondent insurer, in the event it had to pay Hart compensation, is given the statutory right of subrogation against a negligent third person to the extent of the amount of compensation it had to pay. Traders & General Ins. Co. v. West Texas Utilities Co., 140 Tex. 57, 165 S.W.2d 713. It is clear, therefore, that the release which Hart executed and delivered to Hollis et al. could be successfully pleaded in bar of a cause of action against a person not a party to the insurance arrangement, Hanson v. Ponder, Tex.Com.App., 300 S.W. 35, and under facts shown here could be successfully pleaded in bar of a suit for subrogation. It follows that such release estops Hart to thereafter claim compensation from the insurance carrier.

\*     \*     \*     \*     \*     \*

"The petitioner contends that respondent failed to allege and prove facts creating an existing liability against the parties in whose favor the release operates and thereby failed to show its right of subrogation, hence the release should not bar petitioner's right to recover compensation. This contention is overruled. The release having been executed and delivered before any proceeding was had in an attempt to recover compensation, and being broad enough to bar any suit thereafter to be instituted seeking to recover damages as against a person not a party to the insurance agreement, it must be held that 'the release binds as effectually as a prior judgment'."

We believe that the action on the part of appellant with Hunt effectively eliminated any right of appellee for subrogation against Hunt, even though this may have been an immature right at the time. Since this is the only matter assigned as error, and since we find no error on the part of the trial court therein, the judgment of the trial court is affirmed.